

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| JESUS A. SERRANO, | ) No. CV 13-4469-PLA |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION AND ORDER** |
| | ) |
| CAROLYN W. COLVIN, | ) |
| ACTING COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on June 27, 2013, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on July 24, 2013, and August 6, 2013.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on June 24, 2014, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on January 1, 1966.  [Administrative Record ("AR") at 31, 56-57, 105, 134.]  He has at least a high school education and past relevant work experience as a stock clerk/sales clerk.  [AR at 22, 31-32, 139-40, 145-47.]

On February 26, 2010, plaintiff filed an application for Disability Insurance Benefits, and on March 8, 2010, filed an application for Supplemental Security Income payments.  [AR at 17, 111-21.]  In both applications, plaintiff alleged disability beginning on January 5, 1999.  [AR at 17, 111, 115, 134, 139.]  After his applications were denied initially, plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ").  [AR at 17, 68-71, 73-77, 79.]  A hearing was held on March 16, 2011, at which time plaintiff appeared with counsel and testified on his own behalf.  [AR at 17, 27-55.]  A vocational expert ("VE") also testified.  [AR at 17, 51-53.]  On July 1, 2011, the ALJ issued a decision concluding that plaintiff was not under a disability from January 5, 1999, through the date of the decision.  [AR at 17-23.]  Plaintiff requested review of the ALJ's decision by the Appeals Council.  [AR at 10.]  When the Appeals Council denied plaintiff's request for review on April 22, 2013, the ALJ's decision became the final decision of the Commissioner.  [AR at 1-6]; see Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam).  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010).

"Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (internal quotation marks and citation omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same).

1    When determining whether substantial evidence exists to support the Commissioner's decision,

2    the Court examines the administrative record as a whole, considering adverse as well as

3    supporting evidence.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); see Ryan v.

4    Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the

5    entire record as a whole and may not affirm simply by isolating a specific quantum of supporting

6    evidence.") (internal quotation marks and citation omitted).  "Where evidence is susceptible to

7    more than one rational interpretation, the ALJ's decision should be upheld."  Ryan, 528 F.3d at

8    1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d

9    880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's

10    conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.").

11

12                                                    **IV.**

13                                    **THE EVALUATION OF DISABILITY**

14          Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

15    to engage in any substantial gainful activity owing to a physical or mental impairment that is

16    expected to result in death or which has lasted or is expected to last for a continuous period of at

17    least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

18    1992).

19

20    **A.      THE FIVE-STEP EVALUATION PROCESS**

21          The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

22    whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

23    828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

24    determine whether the claimant is currently engaged in substantial gainful activity; if so, the

25    claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

26    substantial gainful activity, the second step requires the Commissioner to determine whether the

27    claimant has a "severe" impairment or combination of impairments significantly limiting his ability

28    to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date, January 5, 1999.[1] [AR at 19.] At step two, the ALJ concluded that plaintiff has the severe impairment of degenerative disc disease with radiculopathy. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings.[2] [AR at 20.]

---

[1]    The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through June 30, 2003. [AR at 19.]

[2]    See 20 C.F.R. pt. 404, subpt. P, app. 1.

1 The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform

2 work with the following limitations:

3       able to lift 10 pounds frequently and 20 pounds occasionally, but
        limited in carrying such weight only short distances; able to stand
4       and/or walk no more than 30 minutes at a time; able to sit no more
        than 45 minutes at a time; unable to perform balancing; unable to
5       climb ladders or work at heights; and able to perform only occasional
        stooping, kneeling, crawling, and crouching.

6

7 [Id.]  At step four, based on plaintiff's RFC, the ALJ concluded that plaintiff is unable to perform

8 his past relevant work.  [AR at 21.]  At step five, based on plaintiff's RFC, vocational factors and

9 the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national

10 economy that plaintiff could perform, including work as a sorter, inspector, and ticketer.  [AR at

11 22.]  Accordingly, the ALJ determined that plaintiff was not disabled at any time from January 5,

12 1999, through the date of the decision.  [AR at 17, 23.]

13

14                                                   **V.**

15                                   **THE ALJ'S DECISION**

16       Plaintiff contends that the ALJ: (1) improperly relied on VE testimony, and (2) failed to

17 provide legally sufficient reasons for rejecting plaintiff's subjective symptom testimony.  [Joint

18 Stipulation ("JS") at 4-9, 14-25, 29.]  As explained below, the Court agrees with plaintiff, in part,

19 and remands for further proceedings.

20

21 **SUBJECTIVE SYMPTOM TESTIMONY**

22       Plaintiff contends that the ALJ erred in rejecting his subjective symptom testimony.  [JS at

23 14-25, 29.]

24

25 ─────────────────

26       [3]  RFC is what a claimant can still do despite existing exertional and nonexertional
   limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps
27 three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which
   the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149,
28 1151 n.2 (9th Cir. 2007).

                                                    5

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if the claimant meets the first test, the ALJ may reject the claimant's testimony about the severity of his symptoms "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  Factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).

Where, as here, the ALJ did not find "affirmative evidence" of malingering [see, generally, AR at 17-23], the ALJ's reasons for rejecting a claimant's credibility must be clear and convincing. See Benton, 331 F.3d at 1040 (Where there is no evidence of malingering, the ALJ can reject claimant's testimony only by "expressing clear and convincing reasons for doing so.").  "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (internal quotation marks and citation omitted); Berry, 622 F.3d at 1234 (same).  The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." Bunnell, 947 F.2d at 345-46 (internal quotation marks and citation omitted).  A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Id. at 346.  As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

1    A Disability Report received by the Social Security Administration District Office on
2    September 23, 2010, completed by plaintiff's counsel on plaintiff's behalf, indicates that plaintiff's
3    "illnesses, injuries, or conditions" have become "worse" since he last completed a disability report,
4    and that plaintiff "can't do much of anything." [AR at 149-56.] With regard to plaintiff's daily
5    activities, the report notes that plaintiff was "doing everything less." [AR at 154.]

6    At the hearing on March 16, 2011, plaintiff testified that he received treatment at Kaiser
7    approximately three times "around January of [1999]."[4] [AR at 30-31.] Plaintiff reported that he
8    complained to his employer at that time "because [he] had pains in [his] back," and "they just kept
9    telling me that it was okay to go to the doctor." [AR at 32.] Plaintiff stated that he "started going
10   to Kaiser," and that "after probably the third month, they laid me off." [Id.] Plaintiff testified that,
11   in between his initial treatment at Kaiser and later seeking treatment at Alta Med,[5] he received
12   treatment "maybe six times" at San Martin de Porres Medical Clinic.[6] [AR at 32-33.] He also
13   reported that he went "to Mexico for a doctor," and explained that he did not see physicians on a
14   more regular basis "[b]ecause [he] had no money to pay for a doctor." [AR at 33.] Plaintiff testified
15   that "continuous" "neck pains and ... shoulder pains" made him stop working, and that he would
16   "[t]ake a lot of pills" to relieve the pain. [AR at 35-36.] He also reported that he was "born with a
17   defected [sic] [right] arm," that he is left-handed, and that he uses his left arm more, which is
18   where he said he has "the most pain." [AR at 36.] Plaintiff explained that the medical problem
19   with regard to his right arm involved a previous diagnosis of multiple sclerosis, but that the
20   condition "wasn't that severe," to the extent that he reported he is able to use his right arm to hold
21   items, but "can't lift with it." [AR at 36-37.] He additionally stated that his treatment at Alta Med
22   for pain in his lower back included pain medications that put him in "a depressive mood," and that

23   _____

24   [4]    At the hearing, plaintiff's counsel suggested that, although a request for records from Kaiser
     had yielded no records, plaintiff's treatment there was "probably" from "some time in [1998],"
25   because plaintiff's "actual treatment took place in '98 and not in '99." [AR at 54.]

26   [5]    The record includes medical evidence from Alta Med spanning from January 13, 2011, to
     December 8, 2011. [AR at 190-207, 226-30.]
27
     [6]    The record includes medical evidence from San Martin de Porres Medical Clinic spanning
28   from August 20, 2008, to March 24, 2011. [AR at 211-24.]

he is also receiving treatment for his depression.  [AR at 37-38.]  Plaintiff testified that his Alta Med physician "recommended [that he go to] the pain center," Ava Medical, but that he had not been to the pain center because "there's a waiting list of a year."  [AR at 39.]  He reported that, before he was prescribed pain medications, he "was also taking the regular Naprosyn and Ibuprofen pills over the counter," and that they were "[s]omewhat" helpful with regard to his pain.  [AR at 47.]  He reported that some of the medications he was prescribed at Alta Med did help, but that the other ones "make [him] not want to do anything after that."  [AR at 47.]

        With regard to his physical limitations, plaintiff testified that he is able to walk or stand "[f]or about a good 10 minutes, 15 minutes," before he starts to have difficulty, and that he "can't stand in one place for a certain time because [he] start[s] getting dizzy" and he "ha[s] to sit down."  [AR at 39.]  He also testified that he has difficulty sitting "in the same position" for longer than "about 20 minutes" before his back "starts hurting" and he "ha[s] to get up and start moving around again" just to stretch for about a half hour, during which time he is unable to do anything other than stretch.  [AR at 39-41.]  Plaintiff reported being able to drive about five miles "to the store and that's it," because he can't drive farther before he gets dizzy and pain "starts on [his] shoulders."  [AR at 41.]  He testified that he can pick up "a gallon of milk or water" with either his left or right hand, but that he gets "discomfort" in his neck or back if he holds it for "[m]ore than two or three minutes."  [AR at 42-43.]  He testified that using a computer keyboard or doing any significant amount of writing bothers him and causes "tension[]" in his fingers and joints.  [AR at 43-44.]  He stated that he could probably sit at a table and write a letter for ten minutes, but that he would have problems "just keeping [his] head up," and would experience back pain.  [AR at 49-50.]  Plaintiff testified that he is able to do some chores around the house, that he tries "to help with the baby and ... to help [his] wife with whatever chores need to be done," and explained that he can do so for "[p]robably a half-hour," although he has to "rest during that time."  [AR at 44.]  When plaintiff begins a chore, he can continue for "about 20 minutes" before he "ha[s] to sit down again" for about ten minutes.  [AR at 44-45.]  He stated that he is never left alone with his 18-month-old daughter because "sometimes [he] can't pick [her] up," and stated that he is "afraid [he is] going to drop her" because he "can't hold her with one arm."  [AR at 48.]

8

1    In her decision, the ALJ found that "the consultative examiner's opinion, the records of the

2    treating physician and [plaintiff]'s subjective complaints are credited to the extent that [plaintiff] is

3    found to have had a residual functional capacity for a limited range of light level exertion,"[7]

4    including the limitations as provided by the ALJ's assigned RFC. [AR at 21.] Specifically, the ALJ

5    concluded that although plaintiff alleges, throughout the record, "that his condition has markedly

6    limited his functioning," the medical evidence "documents only fleeting, conservative medical

7    treatment," and "does not show that [plaintiff] has consistently required particularly strong

8    medication for pain." [AR at 20.] The ALJ also noted that the report "does not include any direct

9    assessment of [plaintiff]'s physical residual functional capacity by a treating physician." [AR at 21.]

10    Having carefully reviewed the record, the Court finds that the ALJ's reasons for discrediting

11    plaintiff's subjective complaints to the extent explained above do not constitute clear and

12    convincing reasons and/or are not supported by substantial evidence. As an initial matter, the

13    Court agrees with plaintiff that the ALJ failed to conduct the mandated two-step process properly,

14    and finds that remand is warranted on this issue alone. [JS at 17; see AR at 20-21; Lingenfelter,

15    504 F.3d at 1035-36. Despite acknowledging that she "must follow a two-step process in which

16    it must first be determined whether there is an underlying medically determinable physical or

17    mental impairment(s) ... that could reasonably be expected to produce the claimant's pain or other

18    symptoms," the ALJ included no such finding in her decision. [See AR 20-21; see generally AR

19    at 17-23.] Further, although the ALJ cited record evidence with regard to what she considered to

20    be plaintiff's "fleeting, conservative medical treatment," as well as evidence of plaintiff's abilities

21    with regard to performing certain daily activities, the ALJ failed to "make a finding about the

22    credibility of [plaintiff's] statements about the [alleged] symptom(s) and [their] functional effects."

23

24
_____

25    [7]    "Light work involves lifting no more than 20 pounds at a time with frequent lifting or

26    carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a
    job is in this category when it requires a good deal of walking or standing, or when it involves

27    sitting most of the time with some pushing and pulling of arm or leg controls. To be considered
    capable of performing a full or wide range of light work, you must have the ability to do

28    substantially all of these activities." 20 C.F.R. §§ 404.1567(b) & 416.967(b).

[AR at 20-21]; Social Security Ruling ("SSR") 96-7p,[8] 1996 WL 374186, at *1 (adjudicator is required "to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects"). See also SSR 96-7p, 1996 WL 374186, at *2 ("It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

Even if the ALJ had determined -- by following the two-step process for a credibility finding -- that the record establishes the existence of impairments that could have given rise to plaintiff's alleged pain or other symptoms, the Court finds that the ALJ nevertheless failed to provide clear and convincing reasons for rejecting plaintiff's subjective symptom testimony.  See Benton, 331 F.3d at 1040.   Specifically, it appears that the ALJ rejected plaintiff's subjective symptom testimony, in part, because she found that plaintiff sought only "fleeting, conservative medical treatment," and that plaintiff has not required "particularly strong medication for pain." [AR at 20-21.] As explained infra, neither of these is a convincing reason to discount plaintiff's credibility on the basis of conservative treatment.

With respect to the "fleeting" nature of plaintiff's treatment, plaintiff testified that he received treatment at Kaiser approximately three times "around January of [1999]," after which he was laid off from his job. [AR at 31-32.] He explained that he also sought treatment over the course of the approximately ten years between his treatment at Kaiser and beginning his treatment at Alta Med,

---

[8]    "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies.  SSRs are binding on all components of the [Social Security Administration].  SSRs do not have the force of law.  However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

1    both at San Martin de Porres Medical Clinic and in Mexico.  [AR at 32-33.]  Plaintiff testified that

2    he did not see physicians on a more regular basis "[b]ecause [he] had no money to pay for a

3    doctor."  [AR at 33.]  He additionally explained that he had not yet been to the Ava Medical pain

4    center, despite his physician's recommendation, because "there's a waiting list of a year."  [AR at

5    39.]  The ALJ did not acknowledge any of this testimony in concluding that plaintiff was treated

6    only "fleeting[ly]."  Thus, that statement by the ALJ was a mischaracterization of the evidence

7    contained in the record concerning plaintiff's treatment for his pain and other symptoms, and was

8    error.  See Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or

9    misstate the competent evidence in the record in order to justify her conclusion); see also Reddick,

10   157 F.3d at 722-23 (it is impermissible for the ALJ to develop an evidentiary basis by "not fully

11   accounting for the context of materials or all parts of the testimony and reports"); Day v.

12   Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion

13   "simply by isolating a specific quantum of supporting evidence").  Moreover, the ALJ failed to

14   consider plaintiff's inability to afford medical treatment in evaluating the relationship between the

15   amount of care plaintiff received and his credibility.  This was error.  See Regennitter v. Comm'r

16   of Soc. Sec. Admin., 166 F.3d 1294, 1296-97 (9th Cir. 1999) (ALJ cannot reject symptom

17   testimony for not seeking treatment where claimant cannot afford medical treatment or

18   medications); see also Riley v. Astrue, 2010 WL 1443858, at *3 (C.D. Cal. Apr. 9, 2010) (citing

19   SSR 96-7p) (failure to seek medical treatment is acceptable reason to discount pain testimony

20   only if it is unexplained or inadequately explained).

21         With respect to plaintiff's "conservative" treatment, the ALJ found that "the record does not

22   show that [plaintiff] has consistently required particularly strong medication for pain," that plaintiff

23   "uses only Naproxen and Ibuprofen for pain," and that plaintiff "specifically denie[d] using any

24   medication" in his "initial disability [report]."  [AR at 20-21; see AR at 141.]  The Court observes

25   that plaintiff testified that, when he began to get neck and shoulder pains, he would "[t]ake a lot

26   of pills."  [AR at 35-36.]  He reported that he took "the regular Naprosyn and Ibuprofen pills over

27   the counter" before those medications were prescribed to him in higher dosages, and that in their

28   over-the-counter forms, they were only "[s]omewhat" helpful.  [AR at 47.]  As above, the ALJ did

11

not acknowledge any of this testimony in finding that plaintiff has not "consistently required particularly strong medication for pain." Specifically, the ALJ failed to acknowledge plaintiff's hearing testimony with regard to taking "a lot of pills" -- notwithstanding plaintiff's response in a Disability Report indicating that he was taking "[n]o" medications -- and additionally failed to consider what, if any, impact plaintiff's inability to afford treatment had on the "fleeting" nature of his treatment. Thus, the ALJ's statement regarding plaintiff's medication was another mischaracterization of the evidence contained in the record, and was also error. See Gallant, 753 F.2d at 1456; Reddick, 157 F.3d at 722-23; see also Regennitter, 166 F.3d at 1296-97.[9]

Next, the ALJ appears to have rejected plaintiff's subjective symptom testimony, in part, because of her finding that plaintiff "has a moderate activity level, cleans up after his dogs, [and] has had no changes to his sleep patterns."[10] [AR at 21.] As an initial matter, the ALJ fails to specify how plaintiff's activities, as included in his medical treatment notes, translate into an ability to perform gainful employment. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (holding that an ALJ must "make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination") (internal quotation marks, brackets and citation omitted); Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (ALJ errs in failing to make a finding to the effect that ability to perform daily activities translated into the ability to perform appropriate work); see also Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for

_____

[9]   Defendant additionally asserts, in the Joint Stipulation, that "the record contains limited treatment records." [JS at 27.] However, "[l]ong-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citation omitted).

[10]   The ALJ cites treatment records from Alta Med, indicating that plaintiff's "[l]ifestyle" includes a "[m]oderate activity level," that plaintiff "reports there are animals in the home," including "dogs," that plaintiff "cleans up after the animal(s)," and that plaintiff has "no changes to sleep patterns." [AR at 190 (treatment record dated March 17, 2011), 200 (treatment record dated January 26, 2011), 204 (treatment record dated January 13, 2011).]

exercise, does not in any way detract from her credibility as to her overall disability."). Specifically, the ALJ failed to explain how plaintiff's ability to "clean[] up after his dogs," or engage in a "moderate" level of activity, translates into an ability to perform sustained work activity.  [See AR at 21.]

The ALJ additionally failed to explain why she believed plaintiff's statements about the extent of his daily activities as stated to physicians at Alta Med, while at the same time apparently finding his hearing testimony about his daily activities less credible.  See Carradine v. Barnhart, 360 F.3d 751, 755 (7th Cir. 2004) ("[I]f she was testifying truthfully and against her interest about her daily activities, why did the administrative law judge think she was lying about her pain?"); [see also AR at 39 (plaintiff's testimony that he is able to walk or stand "[f]or about a good 10 minutes, 15 minutes," before he starts to have difficulty, and that he "can't stand in one place for a certain time because [he] start[s] getting dizzy" and he "ha[s] to sit down"), 39-40 (plaintiff's testimony that he has difficulty sitting "in the same position" for longer than "about 20 minutes" before his back "starts hurting" and he "ha[s] to get up and start moving around again" just to stretch for about a half hour, during which time he is unable to do anything other than stretch), 41 (plaintiff's testimony that he cannot drive farther than five miles before he gets dizzy and pain "starts on [his] shoulders"), 42-43 (plaintiff's testimony that he gets "discomfort" in his neck or back if he holds a gallon of milk or water for "[m]ore than two or three minutes"), 43-44 (plaintiff's testimony that using a computer keyboard or doing any significant amount of writing bothers him and causes "tension[]" in his fingers and joints), 49-50 (plaintiff's testimony that he could probably sit at a table and write a letter for ten minutes, but that he would have problems "just keeping [his] head up, and [his] back pain"), 44 (plaintiff's testimony that he is able to do some chores around the house, that he tries "to help with the baby and ... to help [his] wife with whatever chores need to be done," and that he can do so for "[p]robably a half-hour," although he has to "rest during that time"), 44-45 (plaintiff's testimony that when he begins a chore, he can continue for "about 20 minutes" before he "ha[s] to sit down again" for about ten minutes), 48 (plaintiff's testimony that he cannot pick up his 18-month-old daughter without fear that he will drop her, because he "can't hold her with one arm").]  See also Gallant, 753 F.2d at 1456 (error for an ALJ to ignore or

1  misstate the competent evidence in the record in order to justify her conclusion); Whitney v.

2  Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not

3  ignore evidence that suggests an opposite conclusion.") (citation omitted).

4        Finally, while an ALJ may consider whether a lack of objective medical evidence supports

5  the degree of limitation, this "cannot form the sole basis for discounting pain testimony." Burch

6  v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).  "The rationale for this restriction is that pain

7  testimony may establish greater limitations than can medical evidence alone." Id. at 680 (citing

8  SSR 96-7p); see also 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the

9  intensity and persistence of your pain or other symptoms or about the effect your symptoms have

10 on your ability to work solely because the available objective medical evidence does not

11 substantiate your statements.").  Thus, even assuming the ALJ's characterization of the medical

12 evidence is supported by substantial evidence, the ALJ may rely upon this rationale only if her

13 other reasons for discounting plaintiff's credibility are proper.[11]  As discussed supra, they are not.

14       The ALJ failed to offer any legally adequate reasons for discounting plaintiff's credibility.

15 Remand is warranted.

16

17                                    **VI.**

18                  **REMAND FOR FURTHER PROCEEDINGS**

19       The Court has discretion to remand or reverse and award benefits.  McAllister v. Sullivan,

20 888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further

21 proceedings, or where the record has been fully developed, it is appropriate to exercise this

22 discretion to direct an immediate award of benefits.  See Lingenfelter, 504 F.3d at 1041; Benecke

23 v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).  Where there are outstanding issues that must

24 _____

25       [11]   The ALJ additionally found that the record "does not include any direct assessment of

26 [plaintiff]'s physical residual functional capacity by a treating physician." [AR at 21.] This reason
   also fails, as Social Security regulations make clear that treating source opinions on issues

27 reserved to the Commissioner -- including RFC -- are not binding, controlling, or given special

28 significance.  20 C.F.R. §§ 1527(e)(1), (2) and (3); 416.927(e)(1), (2), and (3); SSR 96-5p, 1996
   WL 374183.

1   be resolved before a determination can be made, and it is not clear from the record that the ALJ

2   would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is

3   appropriate.  See Benecke, 379 F.3d at 593-96.

4         Here, there are outstanding issues that must be resolved before a final determination can

5   be made.  However, in an effort to expedite these proceedings and to avoid any confusion or

6   misunderstanding as to what the Court intends, the Court will set forth the scope of the remand

7   proceedings.  First, because the ALJ failed to properly assess plaintiff's subjective symptom

8   testimony, the ALJ on remand shall reevaluate plaintiff's testimony.  Second, the ALJ shall allow

9   plaintiff to supplement the record with any relevant medical evidence.  Finally, if necessary, the ALJ

10   shall reassess plaintiff's RFC and determine, at step five,[12] with the assistance of a VE, whether

11   plaintiff is capable of performing other work existing in significant numbers in the national

12   economy.[13]

13         Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;

14   (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant

15   for further proceedings consistent with this Memorandum Opinion.

16         **This Memorandum Opinion and Order is not intended for publication, nor is it**

17   **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

18

19   DATED: July 31, 2014

20                           PAUL L. ABRAMS
                       UNITED STATES MAGISTRATE JUDGE

21

22

23

24

_____

25      [12]   Nothing in this Order is intended to disturb the ALJ's step four finding that plaintiff is unable
  to perform his past relevant work.  [AR at 21.]

26

27      [13]   As the ALJ's reevaluation of plaintiff's subjective symptom testimony may have an impact on
  the ALJ's RFC determination (see 20 C.F.R. § 404.1529), which would in turn have an impact on

28   the jobs, if any, that plaintiff may be able to perform, the Court exercises its discretion not to
  address plaintiff's remaining contention of error.  [JS at 4-9, 14.]